# EXHIBIT J

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

GEORGE MOLINA,                                            :        Index No.: 508862/2021
                                                         :
                                    Plaintiff,           :
                                                         :        **AFFIRMATION IN**
            - against -                                  :        **SUPPORT OF MOTION FOR**
                                                         :        **SUMMARY JUDGMENT**
UBER TECHNOLOGIES, INC., UBER USA, LLC,                   :
ZWEI-NY, LLC, and ASIF SHAFIQUE,                          :
                                                         :
                                    Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MARIA JOSEFINA C. GUALLPA,                                :        Index No.: 727487/2021
                                                         :
                                    Plaintiff,           :
                                                         :
            - against -                                  :
                                                         :
RASIER-NY, LLC, UBER USA, LLC, UBER                       :
TECHNOLOGIES, INC., RASIER-CA, LLC, ASIF                  :
SHAFIQUE, HI LIMO INC., RAMON SEGUNDO                     :
DUTAN-GUAMAN,                                             :
                                                         :
                                    Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SEGUNDO RAMON DUTAN-GUAMAN,                               :        Index No.: 505670/2022
                                                         :
                                    Plaintiff,           :
                                                         :
            - against -                                  :
                                                         :
UBER USA, LLC, UBER TECHNOLOGIES, INC.,                   :
RASIER-NY, LLC, RASIER-CA, LLC, and ASIF                  :
SHAFIQUE,                                                 :
                                    Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

297316252v.1
297316252v.1

ROBERT W. BERBENICH, ESQ., an attorney duly licensed to practice law before the Courts of the State of New York, affirms the following to be true pursuant to CPLR 2106:

1.      I am a partner with Wilson, Elser, Moskowitz, Edelman & Dicker LLP, attorneys of record for Defendants, UBER TECHNOLOGIES, INC., UBER USA, LLC, ZWEI-NY, LLC, RASIER-NY, LLC, and RASIER-CA, LLC ("Uber"). I am familiar with the facts set forth herein, the source being a file maintained by this law firm.

2.      This Affirmation is submitted in support of Uber's motion seeking Summary Judgment dismissing all of the Plaintiff's Complaints and all cross-claims together with such other and further relief.

3.      This case involves an incident on January 19, 2021, when plaintiff George Molina ("Molina") was a passenger in a vehicle owned and operated by Defendant Asif Shafique (hereinafter "Shafique") when the vehicle came into contact with the vehicle operated by Segundo Ramon Dutan-Guaman ("Dutan-Guaman") at the intersection of 98th Street and Corona Avenue in Queens, New York. Plaintiff Maria Josefina C. Guallpa ("Guallpa") was a passenger in the vehicle operated by Dutan-Guaman and owned by Hi Limo, Inc. ("Hi Limo").

4.      Plaintiff alleges Uber is vicariously liable for the conduct of Shafique. However, there are no issues of fact, Shafique was an independent contractor such that Uber was not responsible for his actions.[1] Further, even setting aside Shafique's independent contractor status,

---

[1] New York courts have consistently held that drivers, like Shafique, using the driver version of the Uber App ("Driver App") for trip leads are independent contractors. In Queens County, Justice Fredrick D.R. Sampson, JSC ruled that a driver using the Driver App was an independent contractor and therefore Uber had no responsibility for his actions under the doctrine of *respondeat superior*. *See Duncan v. Uber Technologies, Inc., et al.*, Index No. 700606/2020 (Queens County), Decision & Order Dated October 4, 2023, annexed hereto as **Ex. "K"**. Additionally, a Nassau County Judge ruled that a driver using the Driver App **was an independent contractor and that Uber had no responsibility for his actions under the doctrine of *respondeat superior***. The Court held "the Uber Defendants…[demonstrated] that they exercised only incidental control over [the driver] and that she was an independent contractor, not an employee." The Court provided a nearly identical analysis of control factors set forth here. See *Shenouda v. Uber Technologies, Inc., et al.*, Index No. 601854/20 (Nassau County), Decision & Order Dated January 5, 2024 annexed hereto as **Ex. "M"** (emphasis added).

2

297316252v.1

Uber did not own, operate, lease, maintain, or control the subject vehicle. Thus, Uber is entitled to summary judgment.

## EXHIBITS

Uber attaches the following exhibits in support of their motion:

**Exhibit A**: Affidavit of Erin O'Keefe
**Exhibit B**: Transcript of Defendant Shafique
**Exhibit C**: Transcript of Erin O'Keefe
**Exhibit D**: MV-104
**Exhibit E**: Complaint of Molina
**Exhibit F**: Complaint of Guallpa and Stipulation to Amend Complaint's Date of Loss
**Exhibit G**: Complaint of Dutan-Guaman
**Exhibit H**: Uber's Answer to Molina Complaint
**Exhibit I**: Uber's Answer to Guallpa Complaint
**Exhibit J**: Uber's Answer to Dutan-Guaman Complaint
**Exhibit K**: Pleadings of all other defendants
**Exhibit L**: Joint Trial Order and Consolidation Order
**Exhibit M**: Note of Issue filed by Plaintiff Dutan-Guaman
**Exhibit N**: Platform Access Agreement
**Exhibit O**: Decision in *Duncan*
**Exhibit P**: Certified DMV Record
**Exhibit Q**: Decision in *Shenouda*
**Exhibit R**: Decision in *Cortese*
**Exhibit S**: Decision in *Robinson*
**Exhibit T**: Decision in *Oakley-Williams*
**Exhibit U**: Decision in *Vasquez*
**Exhibit V**: Decision in *Ashar*
**Exhibit W**: Decision in *Smith*
**Exhibit X**: Contract between Uber and Plaintiff
**Exhibit Y**: *Eklund* Decision
**Exhibit Z**: Defendant Shafique Affidavit

3

297316252v.1

# FACTUAL BACKGROUND

### I.    *The Parties.*

5.     Uber Technologies, Inc. is a technology company that uses its proprietary technology to develop and maintain digital multi-sided marketplace platforms. On one side of the marketplace, businesses and individuals utilize Uber's platforms to connect with customers and obtain payment processing services. On the other side of the marketplace are other users who can connect and obtain various services from businesses and individuals including drivers, hotels, airlines, restaurants, healthcare providers, and retailers. **Ex. "A."**

6.     Defendant Shafique was a New York City Taxi and Limousine Commission ("TLC")licensed and regulated independent contractor. **Ex. "B" at 15:3-10; 115:17-24; 117:3-12.** He was operating a 2018 Toyota Camry he owned. ***Id.* at 16:2-13.** At all relevant times in New York City, Uber USA, LLC sublicensed use of the Driver App to TLC regulated drivers to provide lead generation services. **Ex. "A."** Prior to gaining access to the Driver App and pursuant to TLC regulations, Shafique created an account and provided personal identifying information, photocopies of a valid driver's license, TLC license, and, proof of commercial insurance and TLC-plated vehicle registration. **Ex. "A."** Shafique then agreed to the Platform Access Agreement, which plainly stated he was an independent contractor and not Uber's employee. **Ex. "A.";** *see also* **Ex. "J."** As explained through Shafique's deposition testimony, his status as an independent contractor was critical and allowed Shafique the freedom to pursue other sources of income, such as other rideshare apps, including Uber's biggest competitors in the marketplace, which he did in utilizing Lyft. **Ex. "B" at 89:15-25; 125:12-15**.

7.     Plaintiff Dutan-Guaman was operating a vehicle owned by Defendant Hi Limo, and Plaintiff Guallpa was a passenger in his vehicle. **Ex. "D".** Plaintiff Dutan-Guaman alleges that the

4

297316252v.1

vehicle operated by Shafique ran a stop sign, causing the collision with Dutan-Guaman's vehicle.

*Id.*

### III.    *Relevant Procedural Background*

8.      Plaintiff Molina filed a Complaint on April 15, 2021, which Defendants Uber and Shafique both answered. **Ex. "E"."H", and "K".**

9.      Plaintiff Guallpa filed a Complaint on December 14, 2021, and all parties filed Answers. **Ex. "F", "I", and "K".** On July 18, 2018, the parties stipulated to amend Plaintiff's Complaint to correct the date of loss to January 19, 2021. **Ex. "F"**

10.     Plaintiff Dutan-Guaman filed a Complaint on February 24, 2022, and all parties filed Answers. **Ex. "G", "J", and "K".**

11.     On October 31, 2022, the Hon. Carl J. Landicino, J.S.C., entered a Joint Trial Order which joined all three of these cases for discovery and liability. **Ex. "L".** On March 5, 2024, the Hon. Joy F. Campanelli, J.S.C., entered an Amended Consolidation Order, consolidating the companion action of <u>Molina v. Hi Limo Inc., et al.</u> (Index No. 531687/2023) into <u>Molina v. Uber Technologies, et al.</u> (Index No. 508862/2021). **Id.**

12.     On March 27, 2024, Plaintiff Dutan-Guaman filed a Note of Issue. **Ex. "M".**

### LEGAL STANDARD

13.     Summary Judgment is warranted when there are no factual disputes to be resolved by the trier of fact. *Mallad Const. Corp. v. County Fed. Savings*, 32 N.Y.2d 285 (1973). This may occur when all issues are strictly legal, *Long Island Railroad Co. v. Northville*, 42 N.Y.2d 455 (1977), or when uncontroverted facts allow only one conclusion. *Alvord & Swift v. Stewart*, 46 N.Y.2d 276 (1978).

5

297316252v.1

Case 1:24-cv-01207-AT    Document 49-10    Filed 04/14/25    Page 7 of 22

14. Once the movant offers a *prima facie* showing it is entitled to summary judgment, the opponent has the burden of demonstrating the need for a trial of the facts. *Zuckerman v. City of New York*, 49 N.Y.2d 557, 562 (1980). "[O]ne opposing a motion for summary judgment must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he rests his claim or must demonstrate acceptable excuse for his failure to meet the requirement of tender in admissible form." *Id.* "Mere conclusions, expressions of hope or unsubstantiated allegations are insufficient to meet this burden." *Id*. And, an affidavit submitted based upon documentary evidence is sufficient to comply with the summary judgment requirement attesting to its authenticity. *First Interstate Credit All., Inc. v. Sokol*, 179 A.D.2d 583, 584, (1992).

## ARGUMENT

### I. UBER DID NOT CONTROL SHAFIQUE AND CANNOT BE HELD VICARIOUSLY LIABLE FOR HIS ALLEGED CONDUCT.

15. Uber did not control Shafique and cannot be vicariously liable for his conduct. At all relevant times in New York City, Uber sublicensed use of the Driver App to TLC-licensed drivers to provide lead generation services. **Ex. "A".** Prior to gaining access to the Driver App and pursuant to TLC regulations, Shafique created an account and provided personal identifying information, photocopies of a valid driver's and TLC license, proof of commercial insurance and TLC-plated vehicle registration. **Ex. "A".** Shafique then agreed to the Technology Services Agreement, which plainly stated he was an independent contractor and not Uber's employee. **Ex. "A"**; *see also* **Ex. "J"**.

16. As Shafique testified, his status as an independent contractor allowed him freedom to pursue other sources of income and use other rideshare apps. **Ex. "B" at 89:15-25; 125:12-15.**

17. New York Courts have consistently held TLC drivers, like Shafique, using the driver version of the Uber App ("Driver App") for trip leads are independent contractors. Justice

6

297316252v.1

Sampson recently ruled a driver using the Driver App was an independent contractor and Uber had no responsibility for his actions under the doctrine of *respondeat superior*. **Ex. "O"** - *Duncan v. Uber Technologies, Inc., et al.*, Index No. 700606/2020 (Queens County).[2]

18.     *Duncan* is directly on point. Shafique's agreement with Uber and his deposition testimony are clear, he was an independent contractor and not an employee or agent of Uber.[3]

19.     In addition to *Duncan*, New York arbitrators and jurisdictions across the country have consistently held drivers like Shafique are independent contractors. Accordingly, the principles of vicarious liability do not apply, and Uber is entitled to judgment.

20.     Plaintiff also alleged Uber was negligent in the ownership, operation, leasing, maintenance and control of Shafique's motor vehicle and that the Uber App distracted Shafique. His own testimony along with Certified DMV Records establish Uber did not own the vehicle. Further, there is no evidence the app distracted him in any way. **Ex. "L".** *See also* **Exhibit "B" at 16:2-13.** *See also* **Ex. "Z".**

>    **A.  New York Courts have consistently held drivers like Shafique using services like the Driver App for trip leads are independent contractors.**

21.     The undisputed facts prove Uber did not control Shafique and cannot be held vicariously liable for his actions. "An employee is someone who works for another subject to substantial control, not only over the results produced but also over the means used to produce the results." *Matter of O-Brien v. Spitzer*, 7 N.Y.3d 239, 242 (2006). "A person who works for another subject to less extensive control is an independent contractor." *Id.* "The critical inquiry in

---

[2] On January 5, 2024, Justice Jimenez in Nassau County ruled similarly. In *Shenouda,* the Court held "the Uber Defendants…[demonstrated] that they exercised only incidental control over [the driver] and that she was an independent contractor, not an employee." The Court provided a nearly identical analysis of control factors set forth here. *See Shenouda v. Uber Technologies, Inc., et al.*, Index No. 601854/20 (Nassau County), Decision & Order Dated January 5, annexed hereto as **Ex. "Q."**
[3] Uber USA, LLC is a wholly owned subsidiary of Uber Technologies, Inc. **Ex. "A."**

7

297316252v.1

determining whether an employment relationship exists 'pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results.'" *Castro-Quesada v. Tuapanta*, 148 AD 3d 978 (2nd Dept 2017). When determining a worker's status for the purpose of tort liability, relevant factors Courts look to assessing control include whether the worker: (1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule. *Bynog v. Cipriani*, 1 N.Y.3d 193 (2003).

22.    In *Duncan*, Uber moved for summary judgment on the same grounds. Specifically, Uber sought dismissal as the driver using the Driver App was an independent contractor and Uber was not responsible for his actions under the doctrine of *respondeat superior*. Justice Sampson agreed and granted Uber's motion. Specifically, Justice Sampson noted Uber:

> demonstrated [the driver] owned and maintained his own vehicle, paid for his own automobile insurance, received no salary but only retained a percentage of the fares and all of the tips, if any, scheduled his own working hours, had discretion to reject dispatches, and was not provided with W-2 statements. Such evidence established, prima facie, that [the driver] was an independent contractor and as such [Uber] cannot be found liable under the doctrine of *respondeat superior*.

**Ex. "K".**

23.    Suffolk County reached a similar conclusion in *Cortese*. That Court in granting Uber Summary Judgment held Uber "is in the business of lead generation services to independent providers of transportation through the Rides Marketplace" and Uber was not liable for the driver's tortious conduct or negligent hiring. *See Cortese v. Aman*, Suffolk County, Index No. 605477/2019, **Ex. "P".**

24.    *Duncan* and *Cortese* follow a long history of First and Second Department cases where they held livery drivers are independent contractors of dispatching services who have insufficient control to establish vicarious liability as a matter of law. In *Barak*, the Second

8

297316252v.1

Department held livery drivers dispatched from livery services like "Dial 7" were independent contractors over whom the livery companies exercised insufficient control to impose vicarious liability. The Second Department granted defendants motion for summary judgment on the grounds the drivers: (1) owned and maintained their own vehicles; (2) paid for their own automobile insurance; (3) received no salary but retained a percentage of the fares and tips; (4) scheduled their own working hours; (5) had discretion to reject dispatches; (6) were not provided W-2 statements. *Barak v. Chen,* 87 AD3d 955 (2d Dept 2011).

25.     In *Chaouni*, the First Department granted defendant Dial 7's motion for summary judgment holding the livery driver was an independent contractor. The First Department explained:

> Dial 7's drivers own their own vehicles, were responsible for the maintenance thereof, paid for the insurance, and had unfettered discretion to determine the days and times they worked, with no minimum or maximum number of hours or days imposed by Dial 7. Dial 7 does not require its drivers to wear a uniform nor does it have a dress code, and its drivers are free to accept or reject any dispatch as they like, can take breaks or end their shifts whenever they want, and are even permitted to work for other livery base stations. Dial 7's drivers kept a fixed percentage of all fares and 100% of all tips, and Dial 7 did not withhold taxes and issued 1099 forms, not W-2 forms to its drivers. *Chaouni v. Ali*, 105 AD3d 424 (1st Dept 2013).

26.     The First Department was not swayed by the fact Dial 7 inspected the driver's vehicle on a weekly basis and could accept credit card payments via telephone. *Id.* Those two factors were considered incidental and did not rise to the level of control needed. *Id.*

27.     In *Alves*, the First Department granted the defendant car dispatch company's motion for summary judgment. In affirming the Trial Court's dismissal, the First Department wrote: "the driver's ability to work 'without a schedule at his own convenience, was free to work for competitors, and did not receive a fixed salary or benefits. [The driver] was responsible for his own vehicle, its maintenance, gas, and other needs, and was not required to accept any particular

9

dispatch.'" *Id*. Although the driver in *Alves* was given a handbook dictating a general dress code, that was insufficient to raise a question as to independent contractor status. *Alves v. Petik*, 136 AD3d 426 (1st Dept 2016); see also *Zeng Ji Liu v. Bathily*, 145 A.D.3d 558 (1st Dept. 2016)[4]; see also *Jurjevich v. Singh, 2018 N.Y. Slip Op. 30414(U)( 2018); Garrett v. Capozzoli*, 2018 N.Y. Slip. Op. 30672(U) (2018); and *Feimer v. Antonio's Car Service*, 2018 N.Y. Slip. Op. 32505(U) (2018).

28.    Here, each of the *Bynog* factors militate against establishing Shafique as an employee or agent of Uber. Shafique: (1) did not receive a salary from Uber; (2) scheduled his own working hours; (3) had the discretion to reject or ignore ride requests; (4) was issued 1099s instead of W2s; (5) had exclusive control over the means and methods of transporting his customers in his vehicle; (6) had the discretion to determine the routes for each ride; (7) had no minimum or maximum amount of hours mandated by Uber; (8) was free to work for other companies, including competitors; (9) had unfettered discretion to decide what days to work; (10) could take breaks or stop working whenever he wanted; (11) was not required to wear a uniform; (12) did not receive fringe benefits from Uber; (13) paid for his own fuel; (14) was not guaranteed any compensation by Uber; (15) was not taught or trained how to drive by Uber or in any fashion; and (16) was not required to report to Uber on any tips. Finally, Uber did not pay Shafique a wage or a salary. Instead, he paid a service fee for use of the Driver App's lead generation services. Uber did not withhold taxes and Shafique was issued a 1099.. ***See* Ex. "A", "B", & "J".**

29.    The undisputed facts prove Uber lacked sufficient control over Shafique and cannot be held vicariously liable for his actions. Accordingly, Uber is entitled to summary judgment.

---

[4] In reversing the Trial Court's denial of the defendant taxi company's motion for summary judgment, the First Department found the taxi driver to be an independent contractor, not an employee of a medallion taxi owner. In holding, the First Department wrote the following: "the lease agreement [between the taxi company and the driver] expressly disclaims the existence of an employer-employee relationship. Moreover, [the driver] was not guaranteed compensation, worked without a fixed schedule, and was free from [the taxi company's] direction and control." *Zeng Ji Liu*, 145 A.D.3d 558 (1st Dept. 2016).

10

297316252v.1

**B.**     **Shafique's agreement with Uber USA, LLC and oral testimony are clear, he was an independent contractor and not an employee or agent of Uber.**

30.     Shafique had access to the Driver App through the PAA he entered into with Uber USA, LLC, which is a wholly owned subsidiary of Uber Technologies, Inc. Shafique accepted the PAA on January 10, 2020, prior to the accident in question. In relevant part, the agreed-upon PAA provides:

> §1.1(a)...The relationship between you and Uber is solely as independent business enterprises, each of whom operates a separate and distinct business enterprise that provides a service outside the usual course of business of the other. This is not an employment agreement and you are not an employee of Uber. You confirm the existence and nature of that contractual relationship each time you access our Platform. We are not hiring or engaging you to provide any service; you are engaging us to provide you access to our Platform. Nothing in this Agreement creates, will create, or is intended to create, any employment, partnership, joint venture, franchise, or sales representative relationship between you and us. You have no authority to make or accept any offers or representations on our behalf.

> §1.1(b) We do not, and have no right to, direct or control you. Subject to Platform availability, you decide when, where and whether (a) you want to offer For-hire Service facilitated by our Platform and (b) you want to accept, decline, ignore or cancel a Ride (defined below) request; provided, in each case, that you agree not to discriminate against any potential Rider in violation of the Requirements (defined below). Subject to your compliance with this Agreement, you are not required to accept any minimum number of Rides in order to access our Platform and it is entirely your choice whether to provide For-hire Service to Riders directly, using our Platform, or using any other method to connect with Riders, including, but not limited to other platforms and applications in addition to, or instead of, ours. You understand, however, that your Riders' experiences with your Rides, as determined by Rider input, may affect your ability to access our Platform or provide Rides. **Ex. "N"** at § 1.1(a) and 1.1(b) (emphasis added). ***See also*** **Ex. "A".**[5]

---

[5] Additionally, §12.2 of the PAA provides: "You acknowledge and agree that you maintain a contractual or employment arrangement with your Company to perform For-hire services under that Company's operating authority and as directed by that Company. *See* **Ex. "N"** at § 12.2.

297316252v.1

31.     Shafique's agreement with Uber USA, LLC is clear he was an independent contractor. Specifically, the PAA outlines the services to which Shafique had access to via the Driver App on the date in question (e.g., rider lead generation and facilitating payment processing), for which Shafique was charged a fee, and clearly states Shafique was an independent contractor.

32.     Likewise, the PAA states drivers like Shafique utilizing the Driver App for lead generation services (i.e., to connect with riders) are not employees and no agency relationship exists with Uber. At all times, Shafique was a TLC-licensed independent contractor in business for himself and was in complete control of how he operated his transportation business. Accordingly, Shafique's agreement with Uber USA, LLC proves he was a TLC-licensed independent contractor and not Uber's employee.

33.     Shafique testified extensively as to the relationship between himself and Uber under the PAA. Shafique confirmed he received a 1099 from Uber, one of the hallmarks of independent contractor status. **Ex. "B" at 125:20-23.** Shafique did not receive any fringe benefits from Uber, including health insurance or retirement benefits. **Ex. "B" at 126:7-16.**

34.     Shafique was free to work any other job and could sign up for other competitor apps at the same time he had access to the Driver App, like Lyft or Via. **Id. at 125:12-15; 126:21-127:2.** In fact, Shafique is also registered with the Lyft app and still used it at the time of his deposition. **Id. 89:15-25.** The freedom to use other rideshare apps begs the question: how could Uber be deemed to control Shafique when he had the choice to simultaneously use the rideshare applications belonging to Uber's biggest competitors?

35.     When Shafique decided to use the Driver App, it was completely up to him. **Id. at 119:10-24.** No one at Uber provided him with a schedule. **Id. at 121:17-122:8.** Shafique was in complete control of his schedule. He could use the Driver App whenever he wanted, chose which

12

Case 1:24-cv-01207-AT    Document 49-10    Filed 04/14/25    Page 14 of 22

days he wanted to work; there was no requirement that he drive on certain days, and he was allowed to take breaks whenever he wanted. *Id.*

36.     Shafique did not have a boss or manager at Uber; in fact, Shafique testified that "Everyone is boss (sic)" and confirmed that he was his "own boss". *Id.* **at 123:21-124:3.** Uber did not require Shafique wear a uniform. *Id.* **at 124:4-6.**

37.     Uber had no ownership interest in Shafique's vehicle. *Id. at* **122:15-17;** *see also* **Ex. "P".** Uber did not maintain, inspect or repair Shafique's vehicle or pay for maintenance, inspections or repairs. Uber did not pay for the vehicle's gas or insurance nor provide Shafique with any equipment, smartphone or device to use. *Id.* **at 122:17-123:3-13.** Shafique could also use whatever navigation system he wanted while transporting riders. *Id.* **at 129:5-10.**

38.     Shafique testified he was an independent contractor. *Id.* **at 117:7-12.**

39.     Shafique's testimony demonstrates he is an independent contractor. Significantly, **each and every factor enumerated in the various New York appellate cases discussed above is represented through Shafique's testimony.** Additionally, Shafique's testimony is strikingly similar to the testimony of the drivers in the *Duncan* and *Shenouda* cases where Justices Sampson and Jimenez found the driver was an independent contractor over which Uber had no control. Shafique's testimony as to his independent contractor status was confirmed by the testimony of Ms. O'Keefe and further supported in her affidavit. **See Exhibits "A" and "C".** Accordingly, Uber has eliminated all questions of fact whether Shafique was an independent contractor.

      **C. New York Courts and other tribunals across the country have consistently held TLC-licensed drivers like Shafique are independent contractors.**

40.     In March 2024, Arbitrator Amy Eckman granted Uber's dispositive motion, finding the TLC driver was an independent contractor as a matter of law. Arbitrator Eckman found "under

13

297316252v.1

New York law…Respondent cannot hold Claimants [Uber] liable under a theory of vicarious liability."[6] *See Uber v. Robinson*, AAA Case No.: 01-23-0000-3078, **Ex. "S."**

41.      In December 2023, Arbitrator Earnest Badway granted Uber's dispositive motion, finding there was no genuine issue of material fact the TLC driver was an independent contractor. Arbitrator Badway found "New York law clearly provides that Respondent has no basis to hold Claimants [Uber] liable under any theory of vicarious liability." *See Oakley-Williams v. Uber*, AAA Case No.: 01-23-0001-8011, **Ex. "T."**

42.      Also, in March 2023, Arbitrator Elan Weinreb granted Uber's dispositive motion, finding that there was no genuine issue of material fact that the TLC driver was an independent contractor. Thus, Uber was not vicariously liable as a matter of law for the driver's alleged negligence in causing an accident. *See Vasquez v. Uber*, AAA Case No.: 01-22-0002-1444, **Ex. "U."**

43.      Similarly, in May 2022, in a binding arbitration involving a TLC driver, Judge Schachner (Ret.) found Uber was not liable under a theory of vicarious liability. *See Ashar* Decision, **Ex. "V."** These facts are analogous. Judge Schachner's held the driver was an independent contractor based on the plain reading of the PAA. *See also Smith v. Uber Technologies, Inc.,* AAA Case No. 01-210003-9887, **Ex. "W"** (the Arbitrator ruled that the evidence "overwhelmingly" supported the conclusion that the driver was an independent contractor).

44.      Courts across the country have also consistently held drivers using the Driver App are not Uber's agents or employees for which Uber is vicariously liable. As one Florida Appellate Court observed:

---

[6] Arbitrator Eckman also found that "New York does not recognize the legal theory that an application, on its own, could foster driver inattention or distraction." *See* **Ex. "O."**

14

297316252v.1

What "employer" would give someone such free reign to work with competitors and never report into work at any set schedule? The Court reflected that "[a]s a matter of common sense, it is hard to imagine many employers who would grant this level of autonomy to employees permitting work whenever the employee has a whim to work, demanding no particular work be done at all even if customers will go unserved, permitting just about any manner of customer interaction, permitting drivers to offer their own unfettered assessments of customers, engaging in no direct supervision, requiring only the most minimal conformity in the basic instrumentality of the job (the car), and permitting work for direct competitors." *McGillis v. Dep't of Econ. Opp'y*, 210 So. 3d 220, 226 (Fla. 3d DCA 2017).

45.    Courts in Arizona, California, Colorado, Iowa, Kentucky, Michigan, Ohio, Oklahoma, Florida, Louisiana, Mississippi, Georgia, Texas, Utah, New Jersey, Puerto Rico and others have concluded drivers who utilize a digital platform to connect with customers are independent contractors.[7] The same conclusion should be reached here.

---

[7] *See, e.g.*, *Mosley v. Borges, et al.*, Cause No. 2020-67709 (July 14, 2023) (Texas court granting Uber summary judgment holding the subject driver is an independent contractor, not an employee); *Coslett v. Uber Techs., Inc., et al.*, Case No. CV 2018-005515 (March 14, 2023) (Arizona court granted summary judgment finding Uber to be a qualified marketplace platform and the independent driver to be an independent contractor, holding Uber could not be held vicariously liable for the independent driver's alleged negligence under statutory and common law, in addition to expressly finding no joint venture and no non-delegable duty obligation owed by Uber); *Klosa v. Uber Techs., Inc., et al.*, Case No. CV2019-000428 (August 23, 2022); *Nevitt v. Uber Techs., Inc., et al.*, Case No. CGC19573849 (June 16, 2022) (California arbitrator granted MSJ and found no employment relationship, no common carrier, no non-delegable duty, and no actual agency between Uber and the parties); *In Re the Arbitration of: Kelly Miller v. Uber Techs., Inc., et al.*, (Nov. 12, 2019) (Colorado Court granted Uber's MSJ, likening the driver's relationship to one between actors and models and a talent agency where the talent agency refers them to job); *Christensen v. Rasier, LLC, et al.*, Case No. LACL142561 (May 28, 2020) (Iowa Court granting Uber and Rasier's MSJ ); *Hines v. Uber Techs., Inc.*, Case No. 19-A-3711-2 (Sept. 30, 2021) (Georgia Court granting Uber's MSJ finding Uber could not be vicariously liable for the alleged negligence of this driver since the "uncontroverted evidence in the record" demonstrated that the driver was an independent contractor and not an employee of Uber); *Strand v. Uber Techs., Inc., et al.*, No. 19-CI-004701 (Jefferson Co. Cir. Ct, KY Nov. 29, 2022); *Fairburn v. Uber Techs., Inc., et al.*, Case No. 2018-14376 (Oct. 9, 2020) (Louisiana Court granting Uber and Rasier's MSJ); *Eklund v. Uber Technologies, Inc., et al*, Case No. 18015962-NI (Dec. 13, 2021) (Michigan Court granted Uber's MSJ); *Wardingley v. Uber Techs, Inc., et al.*, ECause No. A2402-17-81 (Dec. 6, 2019) (Mississippi Court granted Uber's MSJ); *Zlali v. Uber Techs. Inc., et al.*, Case No. ESX L 004395-18 (Sept. 14, 2021) (New Jersey Court granting summary judgment in Uber's favor after finding Uber "established via competent evidence a prima facie right" to summary judgment based on the "absence of any negligence or causal connection to the claimed injuries."); *Giffin v. Uber Technologies, Inc.*, Case No. CV-2019-06-2295 (Sept. 28, 2021) (Ohio Court granting Uber's MSJ as to vicarious liability finding the driver an independent contractor as a matter of law); *Kerr v. Uber USA, LLC, et al. v. Uber USA, LLC, et al.*, Case No. CJ-2020-3538 (Oklahoma Court granted Uber's Motion for Summary Judgment finding driver was an independent contractor); *Pena Rivera v. Fernandez, et al.*, Case No. SJ2020CV03891 Estado Libre Asociado de Puerto Rico Tribunal General de Justicia Tribunal de Primera Instancia Sala (Aug. 30, 2021) (Puerto Rico Court, analyzing common law control factors, found that the driver was an independent contractor and neither Rasier nor Uber could be held vicariously liable for the driver's alleged actions.); *Cesar Serrano, et al. v. Uber Techs., Inc., et al.*, 20-DCV-273655, 458th Dist. Ct., Fort Bend County, Texas (September 1, 2022) (Texas Court granting Uber's MSJ finding that the driver was an independent contractor as a matter of law and dismissing plaintiff's claims for vicarious liability,

15

297316252v.1

**D. Plaintiff GEORGE MOLINA consented to Rider Terms Confirming He Agreed that Shafique was an Independent Contractor.**

46.     Prior to their ability to gain access to the Rider App, Plaintiff Molina created an account and agreed to the Rider Terms. Plaintiff also acknowledged and agreed that drivers, like Mr. Shafique, are independent contractors and are not employees or agents of Uber. Specifically, the Rider Terms state:

> THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION…WITH THIRD PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION…SERVICES PROVIDE TO YOU BY THIRD PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

**Ex. "X."**

47.     Accordingly, Plaintiff Molina and all the plaintiffs' allegation Shafique transported Molina in scope of his employment is belied by the plain language of the Rider Terms. Plaintiff was given clear and conspicuous notice that drivers, including Shafique, are independent drivers and not agents or employees of Uber or its affiliates. Plaintiff was also informed and agreed that Shafique was an independent contractor and Uber would not be liable for any personal injury that he may sustain during the course of a subject ride. Therefore, Plaintiff cannot claim ignorance or mistake and his attempt to hold Uber liable against the plain language of the Rider Terms fails. Accordingly, under the clear and conspicuous language of the Rider Terms, Uber cannot be held liable and this action should be dismissed with prejudice.

**E. Uber Did Not Own, Lease or Maintain Shafique' Vehicle.**

---

agency, negligent entrustment, and gross negligence); *Nyrkkanen v. Uber Techs., Inc., et al.*, Case No. 200901485 (Aug. 9, 2022) (Utah Court holding the independent contractor was an independent contractor, not an employee or agent of Uber, dismissing Plaintiff's vicarious liability and direct negligence claims, and also holding Uber was not a common carrier)

16

297316252v.1

48.    The Plaintiffs allege Uber was negligent in the ownership, operation, leasing, maintenance, and control of Shafique's vehicle. However, the evidentiary record demonstrates Uber did not own, operate, lease, maintain or control Shafique's vehicle. **Ex. "P."**

49.    In addition to the Certified DMV records, Shafique testified he owned the vehicle and Uber had no ownership interest in or connection to Shafique's vehicle, the principal tool Shafique used to conduct his livery business. **Ex. "B" at 122:15-1.** *See also* **Ex. "Z".**

50.    Uber did not maintain, inspect or repair Shafique's vehicle nor pay for same. ***Id***. Uber did not pay for the vehicle's gas or insurance or provide Shafique with any equipment to use in connection with his vehicle. ***Id*. at 123:4-13.**

51.    Since Uber does not own the vehicle, it is not subject to a claim of negligent entrustment. *See Monette v. Trummer*, 105 A.D.3d 1328 (4th Dept 2013) (holding that action for negligent entrustment was improper against defendant as they were not an "owner" of a vehicle, as that term is defined by VTL §128 and 388, where plaintiff had leased the vehicle from defendant).

52.    *A vehicle owner* is liable for the negligence of a person legally operating that vehicle with permission. *Mikelinich v. Caliandro*, 87 A.D.3d 99, 102 (2d Dept 2011); *see also* VTL §388. Only Shafique can be held liable for his actions because he was the owner and operator of his vehicle.[8] ***See also* Ex. "Z".**

53.    Pursuant to NYC TLC regulations, the registered owner of Shafique's vehicle was responsible for the maintenance of that vehicle. Shafique admitted ownership and being

---

[8] Uber's lack of ownership of the subject vehicle has been supported by recent case law in the Supreme Court of the State of New York, County of Bronx. Specifically, in *Jaiman v. Uber Technologies,* Index No. 22679/17, where the court granted Uber's Motion for Summary Judgment dismissing the plaintiff's claim that Uber was the owner of the subject vehicle involved in that matter. Similarly, in this matter, the proof shows that Uber does not own any vehicle involved in this litigation. Therefore, liability pursuant to Vehicle and Traffic Law §388 does not, and cannot apply to Uber. (See **Exhibit S**).

17

297316252v.1

responsible for maintenance of his vehicle. **Ex. "B"** *at* **123:4-13**. As Uber is not the registered or titled owner of that vehicle, they had no maintenance or repair obligations.

## II. ANY CLAIMS THE APP DISTRACTED SHAFIQUE ARE UNSUPPORTED AND MUST BE DISMISSED

54.    Although not specifically or well pled, plaintiff Molina's Complaint makes a passing allegation regarding distraction. See Ex. Para 45-46. However, any claim by Molina or any of the plaintiff that the App distracted Shafique or caused him to drive dangerously must be dismissed because this is not a legally cognizable claim. Plaintiff alleges that There is nothing to support this nonexistent claim. New York does not recognize a legal theory wherein a developer of a smartphone app owes a duty of care to a plaintiff involved in a motor vehicle accident because a driver involved was distracted. This theory of liability has never been tested in New York because New York law is so clear as to imputing liability only to owners of vehicles pursuant to VTL § 388 or a theory of vicarious liability.

55.    A plaintiff asserting negligence against technology that connects drivers and passengers is akin to blaming a cell phone manufacturer for motor vehicle accidents. Though New York courts have not specifically addressed this theory, other jurisdictions have rejected negligence claims against Uber and cell phone manufacturers. The Circuit Court for the County of Wayne, Michigan granted Uber's Motion for Summary Disposition as to similar claims of distracted driving. *Eklund v. Uber Technologies, Inc.*, et al, Case No. 18-015962-NI (Dec. 13, 2021) (granting Motion for Summary Disposition on all claims including distracted driving by use of the App) **Ex. "S"**.

56.    The Oklahoma Court of Civil Appeals ruled similarly in *Estate of Doyle v. Sprint/Nextel Corp.*, 248 P.3d 947 (Civ. App. Of Okl. 2010) (Court found that the Plaintiff could not establish defendants owed decedent any duty, or that their actions caused the accident).

18

297316252v.1

57.     Here, Plaintiff Molina vaguely attempts to assert a technology application company owes him a duty of care because a driver may have been using the application in the background. No such duty of care exists in New York, and it is not a cognizable legal theory on which to impose liability and any such claims by Molina or any of the plaintiffs much be dismissed.

58.     New York Courts have historically refused to broaden the scope of negligence. "[A] critical consideration in determining whether a duty exists is whether the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm." *Vega v. Crane*, 55 Misc.3d 811 (Sup. Ct. Genesee Cty. 2017), aff'd 161 AD3d 1538 (1st Dep't 2018).

59.     To the extent this Court were to consider Plaintiff's distracted driving allegation under a theory of products liability, the claim fails as the Uber App is not a product. Courts throughout the United States continue to conclude the Uber Applications and the similar Lyft Application are not products.[9]

60.     Even if such a claim was recognized in New York, there is not an iota of evidence in the evidentiary record supporting the claim Shafique was distracted by the Uber App. As such, any such claim must be dismissed as a matter of law.

**CONCLUSION**

---

[9] *See, e.g., Martinez v. Virk et al*, Case No. 23STCV09795 (Oct. 3, 2023); *Ramos v. Uber Techs., Inc. et al.*, Case No.22STCV33007 (June 1, 2023); *Luna, Avelardo v. UTI, et al.*, Case No. 22STCV10806 (Sept. 27, 2022; *Norman v. Uber Technologies, Inc., et al.*, Los Angeles County Superior Court No. 21STCV35632 (March 8, 2022); *Shannon v. Uber Techs., Inc., et al.*, Los Angeles County Superior Court Case No. 21STCV42029 (April 15, 2022); *Toral v. Uber Techs., Inc., et al.*, Los Angeles County Superior Court Case No. 20STCV02030 (April 14, 2021); *Cruz Lopez v. Uber Techs., Inc.*, Santa Clara County Superior Court Case No. 21CV376012 (Nov. 23, 2021); *Polanco v. LYFT, Inc., et al.*, Orange County Superior Court Case No. 30-2019-01065850-CU- PA-CJC (May 13, 2021); *Jane Doe v. Uber Techs, Inc., et al.*, Los Angeles Co., CA Sup. Ct. Case No. 19STCV11874 (Nov. 30, 2020); *A.T. v. Lyft, Inc., et al.*, No. 2019-CV-1759 (Ct. of Common Pleas Lackawanna Co.,Penn. Dec. 29. 2022); *Ameer v. Morgan* et al Case No. 222-CC00417 Circuit Court for the City of St. Louis; and *Baumgartner v. Uber Techs.*, Inc., et al., Case No. 21-2-15753-6 (Sup. Ct. King Co., WA).

19

297316252v.1

Case 1:24-cv-01207-AT    Document 49-10    Filed 04/14/25    Page 21 of 22

61.     The evidence establishes Shafique was an independent contractor operating his own transportation business and there is no theory of liability by which the Uber Defendants can be liable. Uber has established entitlement to summary judgment, and all of the plaintiffs' Complaints and all crossclaims must be dismissed against Uber.

**WHEREFORE,** it is respectfully requested the Court grant Uber's motion for summary judgment and dismiss Plaintiff's Complaint with prejudice together with such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         May 24, 2024

*Robert W. Berbenich*
Robert W. Berbenich, Esq.

20

297316252v.1

## WORD COUNT CERTIFICATION

**ROBERT W. BERBENICH,** an attorney duly admitted to practice law before the Courts of the State of New York, upon information and belief, hereby affirms the following to be true pursuant to C.P.L.R. Rule 2106 and under the penalties of perjury:

The Affirmation in has 6514 words, excluding the caption and signature block, as determined by the use of the word count of a word-processing system; thus, it is in compliance with the word count limit set forth in § 202.8-b of this Court's Uniform Rules.

Dated:　New York, New York
　　　　 May 24, 2024

Yours, etc.,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:　　*Robert W. Berbenich*
　　　　Robert W. Berbenich, Esq.
　　　　*Attorneys for Defendants*
　　　　*UBER TECHNOLOGIES, INC., UBER USA,*
　　　　*LLC, and ZWEI-NY, LLC, RASIER-CA,*
　　　　*LLC, and RASIER-NY, LLC*
　　　　150 E. 42nd Street
　　　　New York, New York 10017
　　　　(212) 915-5370

21