UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UBER TECHNOLOGIES, INC., UBER USA, LLC, RASIER-NY, LLC, RASIER, LLC, and RASIER-CA, LLC,

Plaintiffs,

-against-

AMERICAN TRANSIT INSURANCE COMPANY,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/3/2026_____

24 Civ. 1207 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs, Uber Technologies, Inc., Uber USA, LLC, Rasier-NY, LLC, Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"), bring this action for damages and a declaratory judgment against Defendant, American Transit Insurance Company ("ATIC"). *See* Compl. ¶ 1, ECF No. 7. Before the Court are the parties' cross-motions for summary judgment, *see* Uber Mot., ECF No. 42, ATIC Mot., ECF No. 48. Uber seeks partial summary judgment declaring that ATIC has breached its contractual obligations by refusing to defend Uber in twenty-three independent underlying personal injury lawsuits and declaring certain other rights and responsibilities under the parties' contracts. *See* Uber Mem., ECF No. 43, at 1–3; *see also* Uber Reply, ECF No. 54. ATIC argues that it has no obligation to defend Uber and seeks a declaration reflecting the same. *See* ATIC Mem., ECF No. 50, at 1–2; *see also* ATIC Reply, ECF No. 57. For the reasons discussed below, the Court GRANTS Uber's motion and DENIES ATIC's cross-motion.

## BACKGROUND

Uber Technologies is a software company that develops and maintains an application that connects independent drivers to riders seeking transportation services. *See* Uber 56.1 ¶ 1, ECF No. 52 (including ATIC's counterstatements). As is relevant here, twenty-three drivers who provided services

using Uber's application were sued and are alleged to be at fault in twenty-three separate personal injury lawsuits filed in New York state court. *See id.* ¶ 4. Uber is also a named defendant in each action, *id.* ¶ 11, and some, though not all, of the underlying actions allege theories of direct liability against Uber. *Id.* ¶ 68; Uber Mem. at 5; *see* ATIC Mem. at 3. Each of the drivers in the underlying lawsuits is an "insured" entity pursuant to a policy issued by ATIC, Uber 56.1 ¶ 6, and each of those policies states that ATIC has a duty to defend any insured against a lawsuit seeking damages, *id.* ¶ 8.

This action primarily concerns one provision, identical across the policies, which defines an "insured" to include "[a]nyone liable for the conduct of an 'insured' described [in the policy,] but only to the extent of that liability." *Id.* ¶ 9. Uber alleges that, in each underlying action, allegations that Uber is vicariously liable for the conduct of the driver triggered ATIC's duty to defend and indemnify Uber. *See* Uber Mem. at 5–6. ATIC argues that it owes no such duty because the "undisputed material facts establish that Uber is not 'liable for the conduct' of its co-defendant independent drivers" in the underlying lawsuits, and Uber is not an "additional insured" under the policy.[1] *See* ATIC Mem. at 5.

## DISCUSSION

I.      Legal Standard

Summary judgment may be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the Court must evaluate whether there is a genuine triable issue of fact and must "resolve all ambiguities and draw all reasonable inferences [] in the non-movant's favor." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Adickes v.*

---

[1] ATIC does make an argument that if it owes Uber a duty to defend in the underlying lawsuits, it has not breached that duty. *See* Uber Mem. at 5–6 (Uber timely tendered its defenses); ATIC Mem. at 2.

*S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The moving party bears the burden of showing why it is entitled to summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The parties agree that New York law applies to the Court's construction of the insurance contracts relevant to this action.  *See* Uber Mem. at 7–8; ATIC Mem. at 4–5 (citing only New York law).  The interpretation of contractual provisions is "a question of law for the [C]ourt," *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 10 N.Y.3d 170, 177 (2009) (citation omitted), and courts apply general principles of contract interpretation to insurance contracts as they would any other.  *See Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 25 N.Y.3d 675, 680 (2015).

In determining whether a liability insurer owes a claimant a duty to defend, "[i]t is well established" that the duty exists "if the pleadings allege a covered occurrence, even though the facts outside the four corners of those pleadings indicate that the claim may be meritless or is not covered." *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 63 (1991).  If "'the four corners of the complaint' suggest the reasonable possibility of coverage" as to an insured, then New York courts have consistently held that an insurer owes that insured a duty to defend.  *Id.* at 66 (collecting cases).  This rule applies in cases where a party claims to be an insured based on certain facts alleged in the complaint, whether or not those facts can ultimately be proven true.  *See id.*; *Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 9–10 (1985).  Moreover, where "the insurer's interest in defending the lawsuit is in conflict with the defendant's interest [in the lawsuit] . . . [the] defendant [] is entitled to defense by an attorney of his own choosing, whose reasonable fee is to be paid by the insurer." *Pub. Serv. Mut. Ins. Co. v. Goldfarb*, 53 N.Y.2d 392, 401 (1981).

II.    Analysis:  Duty to Defend

"In determining a dispute over insurance coverage, [the Court] look[s] first to the language of the policy." *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 221 (1985).  Each of the

relevant policies states that "anyone liable for the conduct of an 'insured'" is also an insured, "but only to the extent of that liability." Uber 56.1 ¶ 9. Uber claims that the allegations of vicarious liability in the underlying lawsuits trigger this provision, rendering Uber an "insured," "regardless of whether those allegations are groundless or turn out to be false." Uber Mem. at 9; *see id.* at 11. Pointing to *Fitzpatrick*, 78 N.Y.2d at 66–67 and *Colon*, 66 N.Y.2d at 7–9, Uber argues that the mere allegations of vicarious liability trigger a "reasonable possibility of coverage" under the policies, and, therefore, that the duty to defend exists even if one could "reasonably conclude[]" that Uber is not ultimately liable in those suits. Uber Mem. at 9.

The Court agrees. In *Colon*, a personal injury action had been brought against both an owner and driver of a vehicle, alleging that the owner was liable because the driver operated the vehicle with the owner's permission. 66 N.Y.2d at 7. Under the owner's insurance contract, the insurer only had a duty to defend the driver if this allegation were true. *Id.* The New York Court of Appeals held that even though "the issue of permission ha[d] not been judicially resolved" in the underlying action, and even though the insurer "reasonably conclude[d] [on its own investigation] that the driver did not have the owner's permission," the insurer was still liable to the driver because the duty to defend arises "whenever the allegations of the complaint, for which the insured may stand liable, fall within the risk covered by the policy." *Id.* at 8.

Later, in *Fitzpatrick*, the New York Court of Appeals referred to this rule as the "four corners of the complaint" rule. 78 N.Y.2d at 65. In *Fitzpatrick*, the Court of Appeals held that even where a complaint's pleadings do not allege "a covered occurrence," an insurer may nonetheless be required to defend where it has "actual knowledge of facts demonstrating that the lawsuit does involve such an occurrence." *Id.* at 63. The Court of Appeals emphasized that "an insurer's duty to defend is called into play whenever the pleadings allege an act or omission within the policy's coverage," and that

4

"[e]ven where there exist extrinsic facts suggesting that the claim may ultimately prove meritless or outside the policy's coverage, the insurer cannot avoid its commitment to provide a defense." *Id.* at 65–66. New York courts have consistently held that this rule is broad: "[i]f the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73 (1989). And even where facts in the record of the underlying action contradict the allegations in the complaint, New York courts have held that the duty to defend still arises, because the evidence "merely pose[s] factual and legal issues to be resolved in the underlying actions." *Zurich-Am. Ins. Cos. v. Atl. Mut. Ins. Cos.*, 74 N.Y.2d 621, 623 (1989).

It is undisputed that, if taken as true, the allegations in the underlying actions would render Uber "liable for the conduct of [the insured drivers], . . . to the extent of that liability." Uber 56.1 ¶ 9; *see id.* ¶¶ 11–58 (stating that each lawsuit alleges Uber is liable for the "conduct" of the driver). Those allegations are alone sufficient to trigger ATIC's duty to defend.

ATIC's arguments fail. First, ATIC argues that "Uber cannot satisfy its burden to show that it qualifies" as an insured in the underlying lawsuits. ATIC Mem. at 5. But Uber has, in fact, met its burden, by pointing to numerous underlying lawsuits and establishing that, in each lawsuit, it is alleged to be liable for the conduct of a driver. *See* Uber 56.1 ¶¶ 11–58. Because those complaints contain allegations which bring Uber "even potentially within the protection purchased," they trigger ATIC's duty to defend. *Technicon*, 74 N.Y.2d at 73. Next, ATIC argues that *Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Mar. Ins. Co.* instructs that a court should "examine extrinsic evidence . . . to determine whether there was, in fact," coverage under an insurance policy, ATIC Mem. at 6–7, and that here, no evidence has established Uber's liability. *See* 31 N.Y.3d 131, 135 (2018). *Gilbane* does not stand for that proposition. Instead, it held that a plaintiff was not an additional insured under a

5

particular insurance policy, even though an endorsement to the policy had listed that plaintiff as an additional insured, because a separate provision of the insurance contract required that any additional insureds enter into a written contract with the named insured. *Gilbane*, 31 N.Y.3d at 135. Not only do the clauses at issue in *Gilbane* bear no similarity to the clauses at issue here, but *Gilbane* also does not involve allegations in an underlying lawsuit, and does not touch on the line of New York cases establishing the "four corners of the complaint" rule. *See generally Gilbane*, 31 N.Y.3d 131; *Fitzpatrick*, 78 N.Y.2d 61; *Colon*, 66 N.Y.2d 6; *Technicon*, 74 N.Y.2d 66.

Last, ATIC advances a handful of arguments that essentially contend that Uber is not an insured because it will ultimately not be liable in the underlying lawsuits under a vicarious liability theory. *See* ATIC Mem. at 7–8. But this position assumes a conclusion: the record before this Court does not, in fact, establish that Uber has been declared not liable in any underlying lawsuit. *Compare* ATIC 56.1 ¶ 26 (Uber's counterstatement that "none of the courts [in the underlying lawsuits] has ruled yet on the issue of whether Uber is, or is not, liable"), *with* ATIC Mem. at 7–8 ("Uber is not liable for the conduct of any insured . . . as a matter of fact established in each of the [u]nderlying [l]awsuits.") *and* ATIC Reply at 2 ("The question of Uber's ultimate liability for the [u]nderlying [l]awsuits remains with the courts."). Uber may well succeed on those arguments in each underlying action, but they constitute a "factual and legal issue[] to be resolved in the underlying action," not one to be determined here. *Atl. Mut.*, 74 N.Y.2d at 623. As the New York Court of Appeals has made quite clear, "[t]he ultimate responsibility of the insured is not a consideration" when a complaint's allegations are sufficient to trigger the duty to defend. *Colon*, 66 N.Y.2d at 8.

For these reasons, the Court concludes that because the complaints in the underlying lawsuits all allege that Uber is liable for the conduct of the driver, ATIC has a duty to defend Uber. ATIC also has a duty to indemnify Uber to the extent it is ultimately held vicariously liable for the conduct of any

driver.[2] Furthermore, the Court finds that Uber has sufficiently demonstrated that ATIC breached its duty to defend Uber and is thus liable to Uber for damages. *Compare* Uber Mem. at 17–18 (establishing, with reference to the record, that Uber tendered its defense to ATIC and that ATIC refused to defend Uber) *and* Uber 56.1 ¶¶ 59–69, *with* ATIC Mem. (providing no argument that, if ATIC owed Uber a duty to defend, it did not breach that duty).

      III.      <u>Analysis:  Direct Liability Lawsuits</u>

With respect to the subset of underlying lawsuits alleging theories of direct liability against Uber (the "direct liability lawsuits" or "direct liability actions"), Uber argues that ATIC has an obligation to provide independent counsel to defend Uber and that Uber may choose such counsel. *See* Uber Mem. at 18–21. Uber contends that, in the direct liability actions, ATIC's interests conflict in part with Uber's because Uber is insured by ATIC only to the extent that Uber is liable under the vicarious liability theory, but not any direct liability theory. *See* Uber 56.1 ¶ 9. Accordingly, if Uber were held directly liable in those lawsuits, the scope of ATIC's liability would be potentially diminished depending on how those courts resolved questions of apportionment of negligence and responsibility. *See* Uber Mem. at 18–19.

The Court agrees with Uber. In cases where "the defense attorney's duty to the insured would require that he defeat liability on any ground and his duty to the insurer would require that he defeat liability only upon grounds which would render the insurer liable, . . . the insured must be free to choose his own counsel whose reasonable fee is to be paid by the insurer." *Pub. Serv. Mut. Ins. Co. v. Goldfarb*, 53 N.Y.2d 392, 401 n.1 (1981); *see also id.* at 401 ("[I]nasmuch as the insurer's interest in defending

---

[2] Uber claims that the policies relevant to this lawsuit all require ATIC to indemnify any "insured." *See* Uber Mem. at 20–21. Because the Court finds that Uber is an "insured" under the policies, the Court holds that ATIC has a duty to indemnify Uber. ATIC does not argue otherwise. It does not dispute that if Uber is an "insured" under the policies, it must indemnify Uber. It does not respond to Uber's indemnity argument at all, except to the extent that it insists Uber is not an insured. *See generally* ATIC Mem.

the lawsuit is in conflict with the defendant's interest . . . [the] defendant [] is entitled to defense by an attorney of his own choosing, whose reasonable fee is to be paid by the insurer.").  Because Uber's counsel in the direct liability lawsuits has a duty to defend Uber against theories of direct liability as well as vicarious liability, and because ATIC only indemnifies Uber on vicarious liability theories, Uber is entitled to choose its own counsel in any lawsuits which allege theories of direct liability, and the counsel's reasonable fee is to be paid by ATIC.

ATIC argues that there is no conflict of interest in the direct liability lawsuits because "both Uber and its carrier have a common interest in defeating claims based on employment or ownership." ATIC Mem. at 11.  ATIC adds that even with respect to direct liability claims "alleging that [Uber's app] caused a distraction, there is a common interest in establishing that the insured driver was not negligent." *Id.* at 11–12.  However, ATIC's argument actually indicates the precise conflict of interest which triggers Uber's concern:  if Uber were to secure a finding in one lawsuit that the driver was not negligent, it may remain an open question whether Uber was negligent or otherwise liable for the distracting effects of the Uber App.  Such a scenario could benefit ATIC alone by essentially eliminating its own liability but leaving open the question of Uber's liability.  To the contrary, to the extent that Uber defeats any direct liability theories, ATIC's potential liability for the conduct of the driver may increase.  Uber's and ATIC's incentives in the underlying lawsuits are misaligned, and because of this conflict, the Court holds that Uber is entitled to independent counsel of its choosing, whose fee is to be paid for by ATIC.

## CONCLUSION

For the foregoing reasons, the Court finds that:

1. Uber is an "insured" under the ATIC policies in each underlying lawsuit;

2. ATIC owes a duty to defend Uber in each underlying lawsuit;

3. ATIC has breached its duty to defend Uber in each underlying lawsuit, and is liable for damages resulting therefrom;

4. ATIC has a duty to indemnify Uber in the underlying lawsuits, to the extent that Uber is held to be vicariously liable for the conduct of the drivers in the underlying lawsuits; and

5. In any underlying lawsuit in which a theory of direct liability is alleged against Uber, Uber is entitled to choose its own independent counsel, whose reasonable fee shall be paid by ATIC.

Uber's motion for partial summary judgment is GRANTED; ATIC's cross-motion for summary judgment is DENIED.

Uber has styled its motion as a motion for partial summary judgment. By **March 24, 2026**, the parties shall file a status update with the Court concerning any outstanding relief sought.

SO ORDERED.

Dated: March 3, 2026
      New York, New York

_____
ANALISA TORRES
United States District Judge

9